**BAKER, LESHKO, SALINE & BLOSSER, LLP**
*Attorneys for Plaintiff*
**One North Lexington Avenue**
**White Plains, New York 10601-1712**
**914.681.9500**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

KATHERINE SUMNER BACON,                    :

                        Plaintiff,                    :

       -against-                    :

DAVID SPILLER, UNA SPILLER,                    :
GUY CARPENTER, INC. and
SIRVA RELOCATION, LLC,                    :

                 Defendants.                    :

------------------------------------------------------------x

07 Civ. 7206 ( LLS )

**NOTICE OF MOTION**

S I R S:

PLEASE TAKE NOTICE that upon the affidavit of Katherine Sumner Bacon, sworn to January 8, 2008, the affidavit of Mitchell J. Baker, sworn to January 30, 2008, the amended complaint, the residential lease by and among Katherine Bacon and David and Una Spiller, dated June 16, 2006, the annexed exhibits and all of the proceeding heretofore had herein, plaintiff will move this

Court at a date and time to be fixed by the Court, at the Courthouse, 500 Pearl Street, New York, New York 1007 for an Order pursuant to Federal Rules of Civil Procedure 56 for summary judgment on liability only in favor of plaintiff and against defendant David Spiller on the first claim for relief (contract/lease damages) and fourth claim for relief (attorneys' fees), together with such other, further and different relief this Court deems just.

Dated: White Plains, York
      January 30, 2008

**BAKER, LESHKO, SALINE & BLOSSER, LLP**
*Attorneys for Plaintiff*

By: _____
    **Mitchell J. Baker (MB-4339)**
**One North Lexington Avenue**
**White Plains, New York 10601-1712**
**914.681.9500**

To:    Kathyanne S. Cohen, Esq.
       Kaplan, Thomashower & Landau LLP
       26 Broadway, 20th Floor
       New York, New York 10004

BAKER, LESHKO, SALINE & BLOSSER, LLP
*Attorneys for Plaintiff*
**One North Lexington Avenue**
**White Plains, New York 1060-1712**
**914.681.9500**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

KATHERINE SUMNER BACON,                          :

               Plaintiff,            :        07 Civ. 7206 (LBS)(RE)

     -against-                             :

                                **AFFIDAVIT**

DAVID SPILLER, UNA SPILLER,                       :
GUY CARPENTER, INC. and
SIRVA RELOCATION LLC,                             :

              Defendants.        :

------------------------------------------------------------x

STATE OF NEW YORK      )
                         ) ss:
COUNTY OF WESTCHESTER  )

     MITCHELL J. BAKER, being duly sworn, deposes and says:

     1.     I am counsel to Katherine Sumner Bacon, the within Plaintiff. I submit this Affidavit in support of the instant application for summary judgment as to liability in favor of the plaintiff, Katherine Sumner Bacon, and against defendant David Spiller pursuant to Federal Rules of Civil Procedure § 56.

     2.     Ms. Bacon seeks summary judgment as to liability on her claim for damages under a breached residential lease for a residential property located in

Greenwich, Connecticut and for attorney's fees pursuant to the specific terms of the subject lease agreement.

3.      This is a most simple case.  Mr. and Mrs. Spiller signed a residential lease (hereinafter referred to as the "Lease") for the premises known as and located at 10 Eggleston Lane, Old Greenwich, Connecticut on or about June 16, 2006 (hereinafter referred to as the "Premises").  (A copy of the Amended Complaint, dated October 16, 2007, is annexed hereto as Exhibit "A"; a copy of the Answer of David Spiller, dated January 9, 2008 is annexed hereto as Exhibit "B").

4.      The Lease was executed by Mr. and Mrs. Spiller and delivered to Ms. Bacon who accepted and signed the Lease.. (A copy of the Lease, dated June 16, 2006,  is annexed hereto as Exhibit "C".)

5.      The Spillers breached the Lease Agreement.  They never moved into the Premises nor did they pay the rent due under the Lease.

6.      Indeed, checks which were given to Ms. Bacon by a relocation service used by the Spillers and/or Mr. Spiller's employer, stopped payment on checks given under the Lease for the rent for the first month and the security deposit. (Copies of checks of Sirva Relocation LLC totaling $36,000.00 made payable to Katherine Sumner Bacon are annexed hereto as Exhibit "D".)

7.      As is fully set forth in the accompanying memorandum of law, the Lease clearly provides in section 13, among other section of the Lease that the tenant is responsible for the damages which Ms. Bacon suffered due to the breach.

8.    It is submitted that the Lease is also clear that Ms. Bacon is entitled to her legal fees incurred in collecting her damages under the Lease Agreement pursuant to section 13(c) of the Lease.

9.    It is respectfully requested that this Court grant Ms. Bacon summary judgment as to liability only on the first claim for relief which is for damages under the Lease and on the fourth claim for relief which is for attorneys' fees.

10.    It is further requested that this Court schedule a hearing to fix the amount of such damages.

_____
MITCHELL J. BAKER

Sworn to before me this
30th day of January, 2008

_____
Notary Public

ANTHONY C. SALINE
NOTARY PUBLIC, STATE OF NEW YORK
ID No. 02SA6114914
QUALIFIED IN WESTCHESTER COUNTY
MY COMMISSION EXPIRES 08/23/2008

3

**BAKER, LESHKO, SALINE & BLOSSER, LLP**
*Attorneys for Plaintiff*
**One North Lexington Avenue**
**White Plains, New York 1060-1712**
**914.681.9500**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

KATHERINE SUMNER BACON,                          :

                           Plaintiff,            :        07 Civ. 7206 (LBS)(RE)

        -against-                                :

DAVID SPILLER, UNA SPILLER,                      :        **AFFIDAVIT**
GUY CARPENTER, INC. and
SIRVA RELOCATION LLC,                            :

                           Defendants.           :

-------------------------------------------------------x

STATE OF CONNECTICUT      )
                          ) ss:
COUNTY OF FAIFIELD        )

KATHERINE SUMNER BACON, being duly sworn, deposes and says:

1.      I am the Plaintiff in this action.  I submit this Affidavit in support of my application for summary judgment against David Spiller.  I have personal and direct knowledge of the facts and circumstances of this matter.

2.      I have read the accompanying affidavit of my attorney Mitchell J. Baker, sworn to January     , 2008, and I agree with what he has said therein and incorporate it herewith.  I simply wish to add some pertinent facts for this Court's illumination.

1

3. I am the owner of the residential premises, known as and located at 10 Eggleston Lane, Old Greenwich, Connecticut 06807 (hereinafter referred to as the "Premises")..

4. I have rented this residence for some time, and in or about June 2006 I had the house on the market to be rented. I was approached, through real estate agents, and advised that Mr. and Mrs. Spiller wished to rent the residence. Indeed, it was made apparent to me that they were most anxious to sign such lease.

5. On or about June 16, 2006, the Spillers signed a residential lease agreement (hereinafter referred to as the "Lease") for the Premsies.

6. The Lease speaks for itself, but it provides in essence that the Spillers rented the Premises for twelve (12) months at a rental of Twelve Thousand ($12,000.00) Dollars per month. Security was set at Twenty-Four Thousand ($24,000.00) Dollars. (A copy of the Lease, dated June 16, 2006, is annexed hereto as Exhibit "A").

7. On or about June 16, 2006 I accepted these terms, and I signed the Lease.

8. On or about this time, I was also given checks issued by Sirva Relocation, LLC, who I believe to be the relocation service used by the Spillers, in the amount of Thirty-Six Thousand ($36,000.00) Dollars which represented two months security and the first months rent payment.

9. Shortly after the lease was signed, it became apparent that the Spillers did not want to abide by the terms of the Lease. Simply stated, they never moved in to the Premises, and I was advised by my bank that payment was stopped on the checks given by Sirva Relocation, LLC (Copies of check numbers 00035477 and 00035477 issued on

2

the account of Sirva Relocation, LLC, dated June 16, 2006, and made payable to me, are annexed hereto as Exhibit "B").

10.    The Spillers never paid rent to me and never took occupancy of the Premises.

11.    I have always been ready, willing and able to fully comply with the Lease which is the subject of this lawsuit.

_Katherine Sumner Bacon_
KATHERINE SUMNER BACON

Sworn to before me this
day of January, 2008

_Joan Marshall Cresap_
Notary Public

JOAN MARSHALL CRESAP, ESQ.
Notary Public, State of New York
No. 02CR-4965905
Qualified in Westchester County
My Commission Expires April 30, 20_10_

Exhibit "A"

**BAKER, LESHKO, SALINE & BLOSSER, LLP**
*Attorneys for Plaintiff*
**One North Lexington Avenue**
**White Plains, New York 10601-1712**
**914.681.9500**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**PLAINTIFF DEMANDS**
**TRIAL BY JURY**

----------------------------------------------------------------x

KATHERINE SUMNER BACON,

Plaintiff,

07 Civ. 7206 ( LBS )(RE)

-against-

**AMENDED**
**COMPLAINT**

DAVID SPILLER, UNNI SPILLER,
GUY CARPENTER, INC. and
SIRVA RELOCATION, LLC,

Defendants.

----------------------------------------------------------------x

Katherine Sumner Bacon, by her attorneys, Baker, Leshko, Saline &

Blosser, LLP, complaining of the above-mentioned defendants, alleges as follow:

### *Parties*

1. The plaintiff, Katherine Sumner Bacon, (hereinafter "Plaintiff" or

"Ms.Bacon") is a citizen of the United States and resident of the

State of Connecticut, County of Fairfield, and resides at 10 Eggleston Lane, Old Greenwich, Connecticut 06870.

2. Ms. Bacon is the owner in fee simple of the Premises including the house and furnishings located at 10 Eggleston Lane, Old Greenwich, Connecticut (hereinafter the "Premises").

3. Upon information and belief, David Spiller is a citizen and national of the United Kingdom, England, and maintains an address at Green Flags, Stoneswood Road, Limpsfield, Surrey RH8 0QY England.

4. Upon information and belief, he is married to Unni Spiller who resides at the same address.

5. In connection with the transactions and issues in this case, Mr. Spiller maintains residence in New York City and a business address with the offices of Guy Carpenter & Company, Inc. located at One Madison Avenue, 4th Floor, New York, NY 10010-3658.

6. Guy Carpenter & Company, Inc. (sometimes hereinafter referred to as "GCI") is located within the City of New York in the County of New York at One Madison Avenue, 4th Floor, New York, NY 10010-3658.

7. GCI is the employer of David Spiller with respect to the transactions in issue.

8. GCI is a corporation duly authorized to do business within the State of New York.

9. GCI is the self-proclaimed world's leading risk and insurance specialist and is part of the Marsh & McLennan Company.

10. David Spiller is the president of Pharmacy 2, a division and unit within Guy Carpenter, Inc.  Mr. Spiller currently resides in New York City.

11. Mr. Spiller is president of GCI and a member of the firm's executive committee and management board and has been so since January 2006 and is currently the CEO of said corporation.

12. Upon information and belief, Sirva Relocation, Inc. LLC., (hereinafter sometimes referred to as "SIRVA") is a corporation, authorized to do business in New York, and which maintains an office at 101 5th Avenue, 3rd Floor, New York, NY 10003.

13. Sirva Relocation was the real estate agent for Mr. Spiller, Mrs. Spiller and GCI in connection with the transactions and the Lease agreement in issue in this case.

14. Upon information and belief, GCI is was responsible for the relocation expenses of Mr. Spiller and hired SIRVA.

15. Original jurisdiction in this court is based upon diversity of citizenship, 28 U.S.C. § 1332.

16. The amount in question in this case is more than $75,000.00, exclusive of interests and costs.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391.


### ***Background***

18. During early June 2006, Defendants David and Unni Spiller negotiated, along with Defendant SIRVA and GCI to rent the Premises belonging to Ms. Bacon at 10 Eggleston Lane, in Old Greenwich, Connecticut.

19. On or about June 15, 2006, Mr. Spiller advised Ms. Bacon and/or her agent that he intended to rent the Premises belonging to Ms. Bacon at the rate of $12,000.00 per month, with a Lease occupancy start date of July 15, 2006, ending July 15, 2007.

20. Ms. Bacon contacted GCI to confirm and verify Mr. Spiller's and Mrs. Spiller's income and obtained a verbal guaranty of the Lease from GCI.

21. At the time that Mr. Spiller sought to rent the Premises belonging to Ms. Bacon, she was residing elsewhere and had a tenant located at the Premises paying $10,000.00 per month.

22. Mr. Spiller, GCI and SIRVA insisted that Ms. Bacon cancel any and all existing and/or prospective tenancies and rent the Premises solely to him.

23. SIRVA and GCI viewed the Premises and requested that Ms. Bacon Lease only to the Spillers, and they stated that the Spillers would pay the sum of $12,000.00 per month.

24. Mr. Spiller represented that he did not need to see the Premises prior to moving in and that he asked Ms. Bacon to hold the Premises for him and for his imminent move of his family to the United States.

25. SIRVA viewed the Premises at least twice and the Spillers were provided with pictures thereof.

26. Mr. Spiller and his wife, via credit approvals and other written agreements, confirmed that they would pay the full rent requested by Ms. Bacon, $144,000.00 for one year and executed a rental agreement based upon those statements on June 16, 2006.

27. Ms. Bacon canceled her Lease negotiations with all other tenants in reliance upon the execution of the Lease with the Spillers.

28. On or about June 16, 2006 Mr. & Mrs. Spiller faxed a signed Lease agreement to Ms. Bacon's agent, Fran Ward, agreeing to pay rent for the Premises at 10 Eggleston Lane in the amount of $144,000.00 for one year including in said agreement various provisions. (A copy of the Lease agreement (hereinafter the "Lease") executed by Mr. Spiller and his agent is annexed hereto as Exhibit "A".)

29. In connection with the execution of said Lease, checks for security deposit and first and last months' rent were paid by SIRVA to Ms. Bacon in the amount of $36,000.00.

30. Within a few days of execution of the Lease and tender of the checks, all checks were dishonored by the bank.

31. Upon information and belief, this was done at the direction of SIRVA, Mr. Spiller and/or GCI.

32. Subsequently, Mr. Spiller, SIRVA and GCI breached the Lease by not showing up and not paying for his rental and occupancy. Neither Mr. or Mrs. Spiller, nor SIRVA nor GCI ever provided any written notification to the plaintiff to terminate the Lease.

33. Ms. Bacon maintained the Premises on the public real estate/MLS market in Fairfield County, and has not been able to obtain another tenant since June of 2006.

34. Based upon the foregoing Ms. Bacon alleges damages for breach of contract, wrongful dishonor of check and common law fraud.

### *AS AND FOR A FIRST CLAIM FOR RELIF*

35.  Defendants David Spiller, Unni Spiller, GCI and SIRVA negotiated for and requested that Ms. Bacon provide a contract of Lease for Premises at 10 Eggleston Lane.

36. Despite having executed a contract for the Lease and occupancy of Ms. Bacon's Premises, Mr. Spiller and Ms. Spiller failed to comply with said Lease and did not pay for use and occupancy as required by the contract.

37. Mr. Spiller's agents have advised Ms. Bacon that the contract was canceled at his request because he did not come to live in the United States.

38.  Based upon the foregoing, the plaintiff has been damaged in the amount of $144,000.00, plus attorneys' fees and interest thereon.

### *AS AND FOR A SECOND CLAIM FOR RELIEF*

39. Plaintiff repeats and   reallages all allegations and statements in paragraphs "1" through "38" as if more fully set forth herein.

40. Defendants David Spiller, Unni Spiller, GCI and SIRVA negotiated for and requested that Ms. Bacon provide a contract of Lease for Premises at 10 Eggleston Lane, Old Greenwich, CT.

41. In reliance upon said negotiations, and as agreed pursuant to the Lease for the Premises, defendants David Spiller and SIRVA tendered checks to her in the amount of $36,000.00 on or about June 16, 2006.

42. After issuance of said checks, defendants David Spiller and SIRVA improperly withheld payment to Katie Bacon after issuing a check in the amount of $36,000.00 based upon their account and the funds drawn by the agents.

43. At the time that said defendants issued said check to Katie S. Bacon the funds were not in the account and the defendants never had any intention of paying Ms. Bacon in accordance with said checks.

44. Such conduct in failing to pay checks as drawn, and as required by contract, is a violation of Conn. Gen. State §53-a-128 and Conn. Gen. Statute §52-565a. Both Spiller and SIRVA were provided with the proper notice to cure said dishonor of check and failed to do so.

45. The wrongful dishonor of a check is also a violation of New York State UCC § 3-412 and 3-413.

46. The defendants David Spiller and SIRVA have failed to honor the checks despite being offered an opportunity to cure. Because there was never any intention on their part to pay the checks as drawn, these defendants are liable to Ms. Bacon for fraud and treble damages based upon both New York and Connecticut general statutes for wrongful dishonor of checks.

47. Based upon the foregoing misconduct, defendants Spiller and SIRVA are liable to Ms. Bacon in an amount to be determined by the Court for issuing such bad checks, plus interest thereon.


## *AS AND FOR A THIRD CLAIM FOR RELIEF*

48. Plaintiff repeats, reiterates and realleges all allegations and statements paragraphs in "1" through "47" as if more fully set forth herein.

49. . Defendants David Spiller, Unni Spiller, GCI and SIRVA negotiated for and requested that Ms. Bacon provide a contract of Lease for Premises.

50. Ms. Bacon relied upon such promises and representations to her detriment.

51. Defendants David Spiller and SIRVA tendered checks to her in the amount of $36,000.00.

52. The defendants negotiated with Ms. Bacon and expressively requested that she cancel her tenant for the said Premises and Lease only to Mr. Spiller.

53. At the time of said statements to Ms. Bacon, the defendants never had any intention of complying with the Lease agreement.

54. Because the defendants all collectively conspired to falsely advise Ms. Bacon of their intentions and never intended to comply with the contract that Ms. Spiller executed, they are liable to the claimant for fraud in the inducement of the Lease.

55. Defendants are liable to Ms. Bacon for fraud in an amount to be determined by this Court, compensatory and exemplary damages, plus interest thereon.

## *AS AND FOR A FOURTH CLAIM FOR RELIEF*

56. Plaintiff realleges and repeats the allegations contained in paragraphs "1" through "55" of this complaint as if more fully set forth herein.

57. The Lease Agreement provides that in the event that defendants breach such Lease, they are responsible for reasonable attorneys fees in connection with any such action to collect rents due and/or monies owed.

58. Defendants Mr. Spiller and Ms. Spiller are liable to Ms. Bacon for her legal fees incurred in this action in an amount to be determined by this Court.

**WHEREFORE**, plaintiff demands judgment as follows:

1.    On the first claim for relief, the sum of $144,000.00;

2.    On the second claim for relief,  the sum of $36,000.00, plus compensatory and exemplary damages.

3.    On the third claim for relief, the sum of $200,000.00, plus compensatory and exemplary damages.

4.    On the fourth claim for relief, a sum to be determined by this Court, but not less than $10,000.00;

5.    Costs and disbursements of this action; and

6.   For such other, further and different relief this Court deems
just.

Dated:  White Plains, York
        October 16, 2007


                    **BAKER, LESHKO, SALINE & BLOSSER, LLP**
                    **Attorneys for Plaintiff**


                    **By:**_____
                        **Mitchell J. Baker (MB-4339)**
                    **One North Lexington Avenue**
                    **White Plains, New York 10601-1712**
                    **914.681.9500**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

KATHERINE SUMNER BACON,                    :        07 Civ. 7206 (LLS)

               Plaintiff,                :

               v.                     :        ANSWER WITH
                                                    CROSS-CLAIMS AND
DAVID SPILLER, UNA SPILLER, GUY            :        THIRD-PARTY
CARPENTER, INC. & SIRVA                              COMPLAINT
RELOCATION, LLC,                           :

               Defendants.               :
-------------------------------------------------------------x

DAVID SPILLER AND UNA SPILLER,             :

               Third-Party Plaintiffs,   :

               v.                     :

CARTUS CORPORATION,                        :

               Third-Party Defendant.    :
-------------------------------------------------------------x

RECEIVED
JAN 09 2008
U.S.D.C. S.D.N.Y.

      Defendants David Spiller, Una Spiller (collectively "the Spillers") and Guy

Carpenter & Company, LLC s/h/a Guy Carpenter, Inc. ("Guy Carpenter") (the

Spillers and Guy Carpenter are referred to collectively as "defendants"), by their

attorneys, Kaplan, Thomashower & Landau LLP, for their Answer to the Amended

Complaint (the "Complaint") of plaintiff, Katherine Sumner Bacon ("Bacon"), allege

as follows:

### WITH RESPECT TO THE PARTIES

    1.     Deny knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 1 of the Complaint.

2.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint.

3.      Upon information and belief, admit the allegations contained in paragraph 3 of the Complaint.

4.      Upon information and belief, admit the allegations contained in paragraph 4 of the Complaint.

5.      Deny the allegations contained in paragraph 5 of the Complaint.

6.      Deny the allegations contained in paragraph 6 of the Complaint, except admit, upon information and belief, that Guy Corporation maintains an office at One Madison Avenue, 4th Floor, New York, New York 10010-3658.

7.      Deny the allegations contained in paragraph 7 of the Complaint, except admit, upon information and belief, that Mr. Spiller is employed by Guy Carpenter.

8.      Upon information and belief, admit the allegations contained in paragraph 8 of the Complaint.

9.      Deny the allegations contained in paragraph 9 of the Complaint.

10.     Deny the allegations contained in paragraph 10 of the Complaint.

11.     Upon information and belief, admit the allegations contained in paragraph 11 of the Complaint except that Mr. Spiller has been President and CEO of Guy Carpenter since June 2006 not January 2006, and Guy Carpenter no longer has a management board.

12.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint.

2

13.    Deny the allegations contained in paragraph 13 of the Complaint.

14.    Deny the allegations contained in paragraph 14 of the Complaint.

<u>WITH RESPECT TO JURISDICTION</u>

15.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint.

16.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint.

17.    Deny the allegations contained in paragraph 17 of the Complaint.

<u>WITH RESPECT TO BACKGROUND</u>

18.    Deny the allegations contained in paragraph 18 of the Complaint.

19.    Deny the allegations contained in paragraph 19 of the Complaint.

20.    Deny the allegations contained in paragraph 20 of the Complaint.

21.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.    Deny the allegations contained in paragraph 22 of the Complaint.

23.    Deny the allegations contained in paragraph 23 of the Complaint.

24.    Deny the allegations contained in paragraph 24 of the Complaint.

25.    Upon information and belief, deny the allegations contained in paragraph 25 of the Complaint.

26.    Deny the allegations contained in paragraph 26 of the Complaint.

27.    Deny the allegations contained in paragraph 27 of the Complaint.

28.    Deny the allegations contained in paragraph 28 of the Complaint and refer to the Lease annexed as Exhibit A to the Complaint for a full and accurate

3

recitation of the contents thereof.

    29.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint.

    30.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint.

    31.    Deny the allegations contained in paragraph 31 of the Complaint.

    32.    Deny the allegations contained in paragraph 32 of the Complaint.

    33.    Deny the allegations contained in paragraph 33 of the Complaint.

    34.    Deny the allegations contained in paragraph 34 of the Complaint.

<u>WITH RESPECT TO THE FIRST CLAIM FOR RELIEF</u>

    35.    Deny the allegations contained in paragraph 35 of the Complaint.

    36.    Deny the allegations contained in paragraph 36 of the Complaint.

    37.    Deny the allegations contained in paragraph 37 of the Complaint.

    38.    Deny the allegations contained in paragraph 38 of the Complaint.

<u>WITH RESPECT TO THE SECOND CLAIM IN THE COMPLAINT</u>

    39.    In response to paragraph 39 of the Complaint, repeat and reallege paragraphs 1 through 38 of this Answer with the same force and effect as if set forth herein in full.

    40.    Deny the allegations contained in paragraph 40 of the Complaint.

    41.    Deny the allegations contained in paragraph 41 of the Complaint.

    42.    Deny the allegations contained in paragraph 42 of the Complaint.

    43.    Deny the allegations contained in paragraph 43 of the Complaint.

    44.    Deny the allegations contained in paragraph 44 of the Complaint.

45.    Deny the allegations contained in paragraph 45 of the Complaint.

46.    Deny the allegations contained in paragraph 46 of the Complaint.

47.    Deny the allegations contained in paragraph 47 of the Complaint.

WITH RESPECT TO THE THIRD CLAIM FOR RELIEF

48.    In response to paragraph 48 of the Complaint, repeat and reallege paragraphs 1 through 47 of this Answer with the same force and effect as if set forth herein in full.

49.    Deny the allegations contained in paragraph 49 of the Complaint.

50.    Deny the allegations contained in paragraph 50 of the Complaint.

51.    Deny the allegations contained in paragraph 51 of the Complaint.

52.    Deny the allegations contained in paragraph 52 of the Complaint.

53.    Deny the allegations contained in paragraph 53 of the Complaint.

54.    Deny the allegations contained in paragraph 54 of the Complaint.

55.    Deny the allegations contained in paragraph 55 of the Complaint, except admit that plaintiff purports to bring a claim for fraud.

WITH RESPECT TO THE FOURTH CLAIM FOR RELIEF

56.    In response to paragraph 56 of the Complaint, repeat and reallege paragraphs 1 through 55 of this Answer with the same force and effect as if set forth herein in full.

57.    Deny the allegations contained in paragraph 57 of the Complaint.

58.    Deny the allegations contained in paragraph 58 of the Complaint.

AS AND FOR A FIRST SEPARATE AND COMPLETE DEFENSE

59.    The Complaint fails to state a claim upon which relief can be granted

against defendants.

### AS AND FOR A SECOND SEPARATE AND COMPLETE DEFENSE

60.    Plaintiff's claims against defendants are barred, in whole or in part, by the statute of frauds.

### AS AND FOR A THIRD SEPARATE AND COMPLETE DEFENSE

61.    Plaintiff's claims against defendants are barred, in whole or in part, by the doctrines of laches, estoppel, waiver and unclean hands.

### AS AND FOR A FOURTH SEPARATE AND COMPLETE DEFENSE

62.    Plaintiff failed to mitigate her damages, if any.

### AS AND FOR A FIFTH SEPARATE AND COMPLETE DEFENSE

63.    The damages, if any, alleged to have been sustained by plaintiff were caused, in whole or in part, by plaintiff's own culpable conduct or the conduct of some entity other than defendants.

### AS AND FOR A SIXTH SEPARATE AND COMPLETE DEFENSE

64.    Guy Carpenter is not a party to the Lease annexed as Exhibit A to the Complaint.

### CROSS-CLAIMS AND THIRD-PARTY COMPLAINT

### THE PARTIES

65.    Defendants/Cross-Claim Plaintiffs/Third-Party Plaintiffs David and Una Spiller are residents of London, England.

66.    Upon information and belief, cross-claim defendant SIRVA Relocation LLC (together with its affiliates, "SIRVA") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 101 5th

Avenue, 3rd Floor, New York, New York 10003.

67.    Upon information and belief, third-party defendant Cartus Corporation (together with its affiliates, "Cartus") is a corporation organized and existing under the laws of Delaware with its principal place of business at 40 Apple Ridge Road, Danbury, Connecticut 06810.

## JURISDICTION AND VENUE

68.    Jurisdiction over the subject matter of these cross-claims and third-party claims is conferred on this Court by 28 U.S.C. §§ 1332(a)(2) and 1367.  The amount in controversy exceeds $75,000, exclusive of interests and costs.

69.    Venue is proper in this District under 28 U.S.C. § 1391 (a)(3) in that defendant and cross-claim defendant SIRVA and third-party defendant Cartus were subject to personal jurisdiction in this district when this action commenced and remain subject therein.

## FACTUAL BACKGROUND

70.    Defendants and third-party plaintiffs the Spillers repeat and reallege each and every allegation contained in paragraphs 1 through 69 of this Answer with the same force and effect as if set forth herein in full.

71.    Beginning in or around 2006, the Spillers contemplated temporarily relocating to the United States with their children.

72.    The Spillers engaged SIRVA and Cartus to help in their relocation, including finding housing that was suitable for the Spillers' needs, appropriately priced and otherwise reasonable under the circumstances.  Pursuant to the agreement with the Spillers, SIRVA was to conduct the day to day search for suitable housing

7

and Cartus was to supervise that work to ensure that any house secured for Spillers was appropriate to their needs and otherwise appropriate and reasonable.

73.    The Spillers used and relied upon the services and expertise of SIRVA and Cartus with respect to their potential temporary relocation.

74.    As part of the engagement of SIRVA and Cartus, the Spillers disclosed to both SIRVA and Cartus the Spillers' particular housing and location needs.

75.    SIRVA and Cartus were unable to locate a property that met the Spillers' needs, as those needs had been communicated to SIRVA and Cartus. After presenting several unsuitable properties to the Spillers and having those properties rejected, SIRVA and Cartus became worried that they would be unable to find a suitable property for the Spillers.

76.    Accordingly, SIRVA and Cartus determined to cause the Spillers to accept a property that SIRVA and Cartus knew or should have known was unsuitable for the Spillers' needs.

77.    On Friday, June 16, 2006, an agent for SIRVA informed Mr. Spiller and Cartus that she had found a rental property located at 10 Eggleston Lane, Old Greenwich, Connecticut 06870 (the "Eggleston Property"). The agent for SIRVA further informed the Spillers that she had viewed the Eggleston Property and that it met the Spillers' special needs. The Spillers were in London on that day and therefore could not view the property.

78.    SIRVA and Cartus knew or should have known that the Eggleston Property was unsuitable for the Spillers.

79.    In order to induce the Spillers to accept the Eggleston Property,

8

SIRVA, through its agent, falsely told the Spillers that: (a) the Eggleston Property was suitable and met the Spillers' needs; (b) there were no other properties suitable for the Spillers' needs; (c) the Spillers needed to agree to lease the property, sight unseen, that very day -- June 16, 2006 -- and that they could not wait to inspect the property; and (d) that the Spillers needed to pay substantially above the asking price in order to ensure that they obtained the lease on the Eggleston Property.

80. Cartus was aware of these representations at or about the time they were made to the Spillers.

81. SIRVA and Cartus knew or should have known that these representations were false when made.

82. SIRVA and Cartus knew or should have known that the Spillers would rely upon these representations in deciding to agree to lease the Eggleston Property.

83. Neither SIRVA nor Cartus advised the Spillers that the representations were false or that the Eggleston Property was not suitable for the Spillers' needs. To the contrary, they advised the Spillers to lease the Eggleston Property on the terms and the timetable suggested by SIRVA.

84. On June 16, 2006, in reliance upon the representations set forth above, the Spillers decided to agree to lease the Eggleston Property.

85. On June 16, 2006, SIRVA purported to commit the Spillers to lease the Eggleston Property.

86. Mr. Spiller traveled to the United States as soon as possible specifically to inspect the Eggleston Property. He did so on June 19, 2006. It was immediately apparent, contrary to SIRVA's representations, that the Eggleston

Property did not meet the Spillers' needs. The Spillers immediately informed SIRVA that they did not want to rent the Eggleston Property.

87.    Cartus was aware of all of the foregoing. Within several days after June 19, 2006, Cartus informed the Spillers that they would not be held accountable under any lease by the owners of the Eggleston Property.

AS AND FOR THE FIRST CROSS-CLAIM AGAINST SIRVA
AND FIRST THIRD-PARTY CLAIM AGAINST CARTUS

88.    Cross-claim and third-party plaintiffs the Spillers repeat and reallege each and every allegation contained in paragraphs 1 through 87 of this Answer with the same force and effect as if set forth herein in full.

89.    The Spillers had a contract with SIRVA by which SIRVA agreed to find the Spillers housing in the New York metropolitan area suitable for their needs, as communicated by the Spillers to SIRVA, and otherwise appropriate and reasonable.

90.    The Spillers had a contract with Cartus by which Cartus agreed to find the Spillers housing in the New York metropolitan area suitable for their needs, as communicated by the Spillers to Cartus, and otherwise appropriate and reasonable.

91.    The acts of SIRVA and Cartus, set forth above, constituted a breach of their respective contractual obligations to the Spillers.

92.    The Spillers have been damaged by that breach in an amount to be determined at trial.

## AS AND FOR THE SECOND CROSS-CLAIM AGAINST SIRVA AND SECOND THIRD-PARTY CLAIM AGAINST CARTUS

93.     Cross-claim and third-party plaintiffs the Spillers repeat and reallege each and every allegation contained in paragraphs 1 through 92 of this Answer with the same force and effect as if set forth herein in full.

94.     SIRVA and Cartus owed a duty to the Spillers to exercise due care, skill, expertise, knowledge and competence in advising the Spillers on their potential relocation.

95.     The acts of SIRVA and Cartus set forth above constitute a breach of their duty of care to the Spillers.

96.     By reason of the negligence of SIRVA and Cartus, the Spillers have incurred damages in an amount to be determined at trial.

## AS AND FOR THE THIRD CROSS-CLAIM AGAINST SIRVA AND THIRD THIRD-PARTY CLAIM AGAINST CARTUS

97.     Cross-claim and third-party plaintiffs the Spillers repeat and reallege each and every allegation contained in paragraphs 1 through 96 of this Answer with the same force and effect as if set forth herein in full.

98.     To the extent that the Spillers are held to have entered into a lease of the Eggleston Property, they did so solely based on the representations and advice of SIRVA and Cartus.

99.     It would be unfair and inequitable for the Spillers to incur obligations under a lease of the Eggleston Property and/or to bear the costs of this litigation, when both were necessitated solely by reason of SIRVA's and Cartus' improper, wrongful, negligent, reckless and/or careless acts and conduct.

11

100.    By reason of the foregoing, Cross-claim and third-party plaintiffs the Spillers are entitled to be indemnified by SIRVA and Cartus and to a judgment against them in an amount to be determined upon the trial of this action with costs, disbursements, and reasonable attorney's fees.

## AS AND FOR THE FOURTH CROSS-CLAIM AGAINST SIRVA

101.    Cross-claim and third-party plaintiffs the Spillers repeat and reallege each and every allegation contained in paragraphs 1 through 100 of this Answer with the same force and effect as if set forth herein in full.

102.    SIRVA negligently represented to the Spillers that they had to sign a lease site unseen on the terms proffered.

103.    The Spillers reasonably relied on SIRVA's representations.

104.    The Spillers have been damaged by SIRVA's negligent misrepresentation in an amount to be determined at trial.

## AS AND FOR THE FOURTH CROSS-CLAIM AGAINST CARTUS

105.    Cross-claim and third-party plaintiffs the Spillers repeat and reallege each and every allegation contained in paragraphs 1 through 104 of this Answer with the same force and effect as if set forth herein in full.

106.    Cartus negligently represented to the Spillers that they would not be held accountable under any lease by the owners of the Eggleston Property.

107.    The Spillers reasonably relied on Cartus' representations in agreeing to enter into a lease of the Eggleston Property and not taking any steps to mitigate any damages resulting therefrom.

108.    The Spillers have been damaged by Cartus' negligent

12

misrepresentation in an amount to be determined at trial.

## AS AND FOR THE FIFTH CROSS-CLAIM AGAINST SIRVA

109.    Cross-claim and third-party plaintiffs the Spillers repeat and reallege each and every allegation contained in paragraphs 1 through 108 of this Answer with the same force and effect as if set forth herein in full.

110.    The representations made by SIRVA to the Spillers as set forth in paragraphs 77 through 87, above were false when made.  SIRVA knew or should have known that the representations were false.

111.    The Spillers reasonably relied on SIRVA's representations in agreeing to enter into a lease of the Eggleston Property, including not taking any steps to mitigate any damages resulting therefrom.

112.    The Spillers have been damaged by SIRVA's fraudulent misrepresentations in an amount to be determined at trial.

## AS AND FOR THE FIFTH CROSS-CLAIM AGAINST CARTUS

113.    Cross-claim and third-party plaintiffs the Spillers repeat and reallege each and every allegation contained in paragraphs 1 through 112 of this Answer with the same force and effect as if set forth herein in full.

114.    The representations made by Cartus to the Spillers as set forth in paragraphs 77 through 87, above were false when made.  Cartus knew or should have known that the representations were false.

115.    The Spillers reasonably relied on Cartus' representations in agreeing to enter into a lease of the Eggleston Property, including not taking any steps to mitigate any damages resulting therefrom.

13

116.    The Spillers have been damaged by Cartus' fraudulent misrepresentations in an amount to be determined at trial.

WHEREFORE, Defendants/Cross-Claim Plaintiffs/Third-Party Plaintiffs David Spiller, Una Spiller and Defendant Guy Carpenter & Company, LLC s/h/a Guy Carpenter, Inc. pray that judgment be entered in this action dismissing the Amended Complaint, granting them the relief requested in their Cross-Claims and Third-Party Complaint, and awarding their costs and disbursements, including reasonable attorneys' fees, incurred in the defense of this action and granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
       January 9, 2007

KAPLAN, THOMASHOWER & LANDAU LLP

By: _Kathyanne Cohen_____
     Jonathan P. Wolfert (JPW- 9899)
     Kathyanne S. Cohen (KSC-1710)

26 Broadway, 20th Floor
New York, New York 10004
(212) 593-1700

Attorneys for Defendants/Cross-Claim
   Plaintiffs/Third-Party Plaintiffs David Spiller,
   Una Spiller and Defendant Guy Carpenter &
   Company, LLC s/h/a Guy Carpenter, Inc.

14

# Exhibit "C"

1995 by The Gree
Association of Realto

# THE GREENWICH ASSOCIATION OF REALTORS, INC.

## RESIDENTIAL LEASE

The terms of this Lease dated as of the _____ 16th _____ day of _____ JUNE _____ , _____ 2006 _____ are agreed to

**LANDLORD** KATHERINE BACON                          **TENANT** DAVID & UNNI SPILLER

Address ____ 10    EGGLESTON LANE ____                 Address ____ GREENFLAGG,STONESWOOD RD,LIMPSFIE

____ OLD GREENWICH ____ CT ____ 06807                  ____ SURREY RH8 OQY, ENGL

Original lease term: ____ 12 ____ Number of Months
Beginning at 12:01 a.m. on ____ 7/15/2006 ____ and ending at 11:59 p.m. on ____ 7/14/2007

**DEFINITIONS:**  In this Lease, the following words in this Definitions section have the meanings which follow them:
**You, Your and Tenant:**  The person signing this Lease as Tenant and any other person occupying the Dwelling with our permiss
**We, Our, Us and Landlord:**  The person or business organization signing this Lease as Landlord and anyone who becomes the
owner of the Dwelling after the date this Lease is signed.
All masculine pronouns shall include the feminine or neuter pronouns and all singular pronouns shall include plural pronouns
whenever it makes sense to do so in this Lease.

**Address of Dwelling:** ____ 10 EGGLESTON LA. OLD GREENWICH, CT 06870 ____ , Connec

**Monthly Rent: $** ____ 12,000.00 ____    **Second Year: $** ____    **Security Deposit: $** ____ 24,000.00

Not to exceed two month's rent: one month's rent if Tenant is over age (

**Rental payment to be sent to:** ____

Name, Address

1. **THE LEASE:**  We agree to rent

  ☐ Apartment  ☐ Condominium  ☒ House and Grounds
  ☐ Other (describe) ____
  (the "Dwelling") to you and you agree to rent the Dwelling
  from us for the Lease Term.  We and you agree to be bound
  by the terms of this Lease.  The Lease includes (insert
  number, if applicable) _____  parking space(s); ——
  garage(s) only for your personal use.
  The Dwelling ____ is XX is not a unit in a common
  interest community

2. **RENT:**  You agree to pay us total rent for the Lease Term
  of $ _____ $144,000.00
  You agree to pay us $ _____ $12,000.00
  as of the date of this Lease as rent for the period from
  _____ 7/15/2006 ____ to ____ 8/14/2006
  Thereafter, you shall pay your Monthly Rent in advance on
  the ____ 15th ____ day of each month.  If your
  Monthly Rent check is not honored by the bank on which it
  is drawn, that will mean that we have not received your
  Monthly Rent.  If we have not received your Monthly Rent
  within 10 days of the due date, you will pay interest at the
  rate of 1½% per month on the amount due from the due
  date until it is paid.  You agree to make all Monthly Rent
  payments to us at the rental payment address indicated
  above or wherever we tell you by written notice.

3. **UTILITIES, SYSTEMS & MAINTENANCE:** (checl
  one, not both)

  (a)  We ____ You XX will pay for electricity.
  (b)  We ____ You XX will pay for water.
  (c)  We ____ You XX will pay for telephone.
  (d)  We ____ You XX will pay for cable.
  (e)  We N/A You N/A will pay for security system fe
  (f)  We ____ You XX will pay for lawn and
                          grounds maintenance.
  (g)  We ____ You XX will pay for snow removal.
  (h)  We ____ You XX will pay for trash collection.
  (i)  We ____ You XX will pay for gas.
  (j)  We ____ You XX will pay for heating fuel.
  (k)  We N/A You N/A will pay for opening and
                          closing of pool.
  (l)  We N/A You N/A will pay for seasonal pool
                          maintenance.

  If the Dwelling has oil heat and you are to pay for heati
  fuel, you will pay us, at the beginning of the term,
  then-current price for any fuel in the tank(s) u
  exclusively for the Dwelling.  We will pay you, at the e
  of the term, the then-current price for all fuel in t
  tank(s).

4.  **YOUR DUTIES:** You agree

 (a) to use the Dwelling in compliance with all building, housing and fire codes affecting health and safety and any applicable condominium, co-operative or other applicable rules and regulations affecting the Dwelling. If you do not, and the cost of our insurance increases or we are fined, you will reimburse us for the cost of such insurance increase or such fine or fines.

 (b) to keep the Dwelling clean, neat and safe.

 (c) to remove from the Dwelling all garbage, trash and other waste in a clean and safe manner.

 (d) to keep the Dwelling's plumbing fixtures and all appliances clean and to use them only for the purposes for which they have been designed and to use the toilet facilities only for the disposal of human waste.

 (e) to use all electric, heating, cooling and other systems in the Dwelling in a prudent manner.

 (f) to not willfully or negligently destroy, deface, damage, impair or remove any part of the Dwelling or permit anyone else to do so.

 (g) to avoid disturbing your neighbors' enjoyment of their dwellings and to require other individuals in the Dwelling to do the same.

 (h) to maintain the grounds, shrubbery and trees in a neat and orderly condition.

 (i) to keep the Dwelling in good condition and pay the first $100 of any cost for each repair of the fixtures, the kitchen equipment and other appliances, unless such repair is due to a condition existing on the date of this Lease. You will pay all of such cost if the repair is required because of your misuse or neglect. If such repairs are needed to satisfy our duties under subsections (a) and (b) of Section 11, we shall pay the full costs.

 (j) not to use or allow the use of a waterbed in the Dwelling without prior written consent.

 (k) to keep no pet animals, livestock or fowl in the Dwelling without our written consent, except

_____

 (l) to provide and pay for public liability insurance for your and our mutual benefit of not less than $   1,000,000.00   for bodily injury and property damage in or about the Dwelling. You will provide us with proof of such insurance.

 (m) to maintain and keep in operation smoke and/or fire alarm systems in the Dwelling.

5.  **BROKER:**

 (a) We and you recognize

  SHORE & COUNTRY PROPERTIES    and

  SOTHEBY'S    as the

  broker(s) who arranged this Lease .

 (b) We will pay said broker(s) a commission as agreed upon

 (c) You agree to protect us against the claims of other brokers for a commission for this Lease where the claims are based on showing the Dwelling to you or interesting you in it. This includes paying all costs of defending any such claim, including reasonable attorneys' fees. The provisions of this paragraph shall continue past the end of this Lease.

 (d) no broker is responsible for the management, maintenance or upkeep of the property during the term of this lease.

6.  **SUBLETTING AND ASSIGNMENT:** You will not assign this Lease or sublet the whole or any part of the Dwelling without our written permission. If you assign this Lease or sublet, you shall pay any broker's commission which may be due for the unexpired term of this Lease.

7.  **SECURITY DEPOSIT:** You agree to pay us as of the date of this Lease the Security Deposit. We shall deposit the Security Deposit in an escrow account in a financial institution. We, or any successor to our interest in the Dwelling, shall be the escrow agent for such account and will hold the Security Deposit in accordance with the provisions of § 47a-21 of the Connecticut General Statutes, as amended. If you have carried out your promises under this Lease, we shall return the Security Deposit to you within 30 days after the termination of your tenancy. We shall pay you annually, on the anniversary date of your occupancy, the minimum amount of interest on Security Deposit as required by § 47a-21 of the Connecticut General Statutes, as amended. Such interest will be reported to the Internal Revenue Service using your Social Security number indicated below. You shall provide us with receipts for the payment of final utility charges which are your responsibility prior to the return of the Security Deposit. If you do not carry out your promises under this Lease, we may use the Security Deposit to pay the rent or to repay ourselves for any damages we have because of your broken promises. The Security Deposit shall not be used by you to pay any Monthly Rent. If we keep all or any part of your Security Deposit, we will within the time required by law, give you a list itemizing the nature and amount of the damages we have suffered because of your broken promises.

8.  **USE OF PREMISES:** You agree that the Dwelling shall be occupied and used as a private residence for one family only by you, your immediate family members and your servants. You will not permit any activity in the Dwelling which creates an unusual risk of fire or other hazard. You will not allow the Dwelling to remain vacant for more than fourteen (14) consecutive days without notifying us in advance of the planned vacancy. During any such

vacancy, you agree to maintain the temperature in the Dwelling at not less than 60 degrees. You shall not be absolved of any of your obligations under this Lease during any such vacancy.

9. **HOLDING OVER:**

   (a) You have no right to remain in the Dwelling after this Lease ends.

   (b) Holding over by you does not renew this Lease without our written consent.

   (c) If you remain in the Dwelling without our written consent past the term of this Lease, we may, at our option, (i) elect to treat you as one who has not removed at the end of the term and shall be entitled to all the remedies against you as are provided by law in that situation, or (ii) elect to construe such holding over by you as a tenancy from month to month, subject to all of the other terms and conditions in this Lease, except the Monthly Rent which shall be two times the amount of the Monthly Rent during the last month of the Lease Term.

10. **ALTERATIONS:** Unless you receive our prior written consent

   (a) you may not make alterations or additions to the Dwelling

   (b) you may not drive nails in floors, walls or ceilings,

   (c) you may not paint or wallpaper any portion of the Dwelling,

   (d) you may not change the locks or add any locks to the Dwelling doors,

   (e) you may not remove any smoke or fire detectors or security systems or make them inoperable.

11. **OUR DUTIES:**

   (a) We agree to comply with all building and housing codes dealing with health and safety with respect to the Dwelling.

   (b) We agree to make all repairs and do whatever is needed to put and keep the Dwelling in a fit and livable condition. If the Dwelling is made unfit or unlivable by you, a member of your family, or any person in the Dwelling, you have the duty to make repairs. If you do not make these repairs, we can make them at your expense.

   (c) We agree to keep all common areas, if any, clean and safe

   (d) Except as otherwise provided, we agree to keep in good condition all electric, plumbing, sanitary, heating and other systems and elevators, if any, supplied by us, normal wear and tear arising from reasonable use excepted.

12. **TENANT'S DEFAULT:** We may end this Lease and take possession of the Dwelling if any of the following occurs

   (a) we do not receive your Monthly Rent by the due date or within the period stated in § 47a-15a of the Connecticut General Statutes. We do not need to notify you that the Rent is due.

   (b) you fail to keep any of the promises you have made in this Lease.

   (c) you move out of the Dwelling before the end of the Lease Term.

13. **LANDLORD'S RIGHTS FOR TENANT'S BROKEN PROMISES:** If you break any of your promises in this Lease

   (a) we may end this Lease and make you vacate the Dwelling, and

   (b) to the extent permitted by applicable law, you waive all right to notice to quit (move out), and

   (c) you will pay us all lost rent and other damages and costs we may incur because of your broken promises. These costs may include the expenses of a lawyer, if we hire one, to the extent permitted by law. They may also include the costs of retaking possession of the Dwelling and, if necessary, the costs of redecorating or making repairs. If you break any of your promises, but we take no action because of it, it does not mean that we may not take action later if you break the same, or another, promise. If we have to serve you with a notice to quit possession of the Dwelling during or after the term of this Lease, you will pay us damages in an amount equivalent to the per diem Monthly Rent for each day after you vacate that we are unable to re-rent the Dwelling up to 90 days or until this Lease would otherwise have expired, whichever comes later. You will pay interest at the rate of 1½% per month on any amount (other than as otherwise expressly provided in this Lease) which is unpaid 30 days after we notify you of the amount.

14. **SALE BY LANDLORD:** If we sell the Building, we shall give the new owner your Security Deposit and any Rent you have paid us in advance. After we have done so, you will look only to the new landlord and not to us, to enforce the Landlord's promises under this Lease.

15. **INSPECTION OF DWELLING:**

   (a) You shall not unreasonably withhold consent to our entering the Dwelling.

   (b) We or our agents may, with your consent, enter the Dwelling to do any of the following (i) inspect it, (ii) make necessary or agreed repairs and alterations, (iii) supply agreed to services and (iv) show it

prospective or actual tenants, buyers, workmen, appraisers or mortgage lenders.

(c) We may enter the Dwelling without notice or your consent in case of emergency.

(d) Within 60 days of the end of the Lease if it becomes necessary to us, you shall permit us or brokers to show the Dwelling to prospective or actual tenants, buyers, appraisers or mortgage lenders, and to place a key box upon the Dwelling for the showing of the Dwelling by brokers to prospective tenants or buyers. You agree to sign any authorization or agreement required to permit the use of a keybox upon the Dwelling.

### 16. FIRE OR OTHER CASUALTY:

IF

1. The Dwelling is damaged by fire or other casualty, and

2. The damage substantially impairs the enjoyment of the Dwelling, and

3. You, a member of your family or other person in the Dwelling with your consent, did not cause the damage or destruction by negligence or willful act,

THEN

(a) You will not have to pay rent while the impairment continues and you may vacate the Dwelling and notify us in writing within 14 days of your intention to end this Lease, or

(b) If continued use is lawful, you may vacate any part of the Dwelling rendered unusable, in which case the rent shall be adjusted.

### 17. CONDEMNATION:

(a) If the Dwelling is wholly or partially taken or condemned, you shall have no claim to damages for such taking.

(b) In addition (i) we may end this Lease as of the date of such taking or condemnation or (ii) if the Dwelling is left unusable as a dwelling by such taking, you may end this Lease as of the date of said taking or condemnation or (iii) if we or you do not decide to end this Lease, it shall continue as if no taking or condemnation had occurred.

### 18. NOTICES: If we or you wish to give the other a notice, it shall be in writing. Our notices to you shall be delivered to the Dwelling or mailed to the Dwelling by certified mail, return receipt requested. Your notices to us shall be delivered or mailed by certified mail, return receipt requested, to the place where you last paid your Rent. You and we shall each be responsible for collecting certified mail from the post office if the mail carrier cannot deliver it.

### 19. INDIVIDUAL LIABILITY: Each person who signs thi Lease as Tenant is responsible for payment of the f Rent and will keep all the other promises included in Lease.

### 20. PEACEFUL POSSESSION:

(a) We state that we have the right to lease the Dwelli to you.

(b) You may peaceably and quietly have, hold and enjo the Dwelling, subject to the provisions of this Leas as long as you meet your duties as a tenant under thi Lease and all applicable law.

### 21. CONDITION OF PREMISES:

(a) You have examined the Dwelling and accept it in present condition.

(b) You will not damage the Dwelling or permit dam to be done to it.

(c) When this Lease is ended, you will leave t Dwelling vacant and in as clean and good condition as it is in now. Changes in condition due to ordinary wear and tear or acts of God are excepted. Burn stains, holes or tears of any size or kind in th carpeting, draperies or walls, among other item shall not be considered ordinary wear and tear.

### 22. NO WAIVER:

(a) Our failure to insist on strict performance of any the terms and agreements herein is not a waiver our rights.

(b) Our failure to insist on strict performance of any the terms and agreements herein is not a waiver our rights in case of any later breach of the ter herein.

(c) If we accept overdue Monthly Rent, we waive right to end this Lease because the Monthly Rent wa overdue. Such acceptance will not waive our futu rights if the Monthly Rent is late again.

### 23. BANKRUPTCY:

(a) Your rights under this Lease shall end at our option any of the following occur:

1. you are judged bankrupt, compound your debt or assign your estate for payment of debts, or

2. a receiver of your property is appointed, or

3. this Lease passes to anyone other than you by operation of law, or

4. an attachment or execution is levied against yo estate and not satisfied within 72 hours.

(b) Upon such ending of your rights, all future rent an other sums due become instantly due. Acceptance by

us of any sum from a person other than you shall not be deemed to be a waiver of any of your rights under this Lease.

24. **SUBORDINATION TO MORTGAGES:**   This Lease shall be subject and subordinate at all times to any mortgage(s) now or at any time on the Dwelling. If we desire to place any mortgage(s) on the Dwelling, you agree to sign any instrument which may be necessary or desirable to give any such mortgage(s) priority over this Lease. Your refusal to sign such instrument entitles us to cancel this Lease.

25. **PERSONALTY (Personal Property):**

(a) We also lease to you at no additional rental the personal property now located in the Dwelling and listed in the schedule, if any, attached to this Lease. Such schedule is to be part of this Lease and has been examined and approved by you and us.

(b) You agree to lease said personal property from us.

(c) You shall permit no damage to the personal property and keep the same in good order. You shall pay for repairs and pay for or replace any of the personal property that is damaged, broken or lost.

(d) You shall not permit any of said personal property to be taken out of the Dwelling at any time.

(e) At the end of the term, you shall return said personal property in as good condition as it is now, except for normal wear and tear. Burns, stains, holes or tears of any size or kind in said personal property, among other items, shall not be considered normal wear and tear.

26. **ENTIRE AGREEMENT:**   You and we agree that Lease sets forth our entire agreement. Neither you n shall claim that the other has made any other prom agreement unless the promise or agreement is in v and signed by the party making the promise or agreeme

27. **BINDING EFFECT:** The agreements in this Lease be binding upon and benefit us, and you, and our and respective successors, heirs, executors, administrators, assigns.

28. **OTHER PROVISIONS:**   (See Addendum attache any, which is a part of this Lease).

Landlord _____

KATHERINE BACON

Landlord _____

Tenant _____

DAVID SPILLER

Tenant's Social Security Number:

Tenant _____

UNNI SPILLER

Tenant's Social Security Number:

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

   (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_____

K B (ii) __X__ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the lessor (check (i) or (ii) below):

   (i) _____ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

_____

K B (ii) __X__ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment (initial)**

(c) _____ Lessee has received copies of all information listed above.    *given by Agent for Lessee*

(d) _____ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment (initial)**

GB (e) _JAW_ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| _Karn S Ber_ | 6/16/06 | x _Anne Shere Solie_ | 6/16/06 |
| Lessor | Date | Lessor | Date |
| _Alen Nard_ | 6/16/06 | _Sioness Nardi_ | 6/16/06 |
| Agent | Date | Agent | Date |

**SIRVA RELOCATION, LLC**
ACCOUNT #7
101 FIFTH AVE.  3RD FL.
NEW YORK, NY 10003

CITIBANK, N.A.

1-8/210

Check No. 00035477

06/16/2006

PAY
TO THE
ORDER OF    KATHERINE BACON

560199455  102  4016  02  $62006
24,000.00

TWENTY FOUR THOUSAND AND 00/100                                          DOLL

KATHERINE BACON

PAYMENT STOPPED DO NOT REDEPOSIT

06/23/06  85813  T5816  POL  12347073

MEMO                                                              AUTHORIZED SIGNATURE

⑈035477⑈ ⑆021000089⑆ 5834994 2⑈                    ⑈000 24000

---

**SIRVA RELOCATION, LLC**
ACCOUNT #7
101 FIFTH AVE.  3RD FL.
NEW YORK, NY 10003

CITIBANK, N.A.

1-8/210

Check No. 00035476

06/16/2006

PAY
TO THE
ORDER OF    KATHERINE BACON

560199454  102  4016  02  $62006
12,000.00

TWELVE THOUSAND AND 00/100                                              DOLLA

KATHERINE BACON

PAYMENT STOPPED DO NOT REDEPOSIT

06/23/06  85813  T5816  POL  12347073

MEMO                                                              AUTHORIZED SIGNATURE

⑈035476⑈ ⑆021000089⑆ 5834994 2⑈                    ⑈000 12000